## TECHNICAL PRESS v. SILVERMAN.

(Supreme Court, Appellate Division, First Department. January 6, 1911.)

1. ATTACHMENT (§ 249*)—GROUNDS—THREATENED DISPOSITION OF PROPERTY.
    Evidence on motion to vacate an attachment *held* insufficient to show that defendant was about to dispose of or secrete his property with intent to defraud his creditors.
    [Ed. Note.—For other cases, see Attachment, Dec. Dig. § 249.*]

2. ATTACHMENT (§ 24*)—GROUNDS—RESISTING PAYMENT OF CLAIM.
    That one resists payment of a claim is no ground for attachment.
    [Ed. Note.—For other cases, see Attachment, Cent. Dig. § 56; Dec. Dig. § 24.*]

Appeal from Special Term, New York County.

Actions by the Technical Press against Sime J. Silverman. From orders refusing to vacate attachments, defendant appeals. Reversed, and motions granted.

See, also, 125 N. Y. Supp. 1146.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

A. Gruber, for appellant.

M. P. Doyle, for respondent.

DOWLING, J. These two actions are brought against defendant for moneys claimed to be due in connection with the printing of a periodical called "Variety" and for stationery bills. The first cause of action is predicated upon two promissory notes made by defendant to the order of plaintiff for the printing of "Variety" and job printing. The second cause is to recover damages for the breach of a contract to take, use, and pay for certain paper for the inside and outside cover of said periodical. Warrants of attachment were issued in both these actions upon the ground that the defendant, being a resident of the state of New York, was about to assign, dispose of, or secrete his property with intent to defraud his creditors.

From the affidavits it appears that the defendant who, pursuant to the provisions of law, is doing business under the name of the "Variety Publishing Company," publishes a certain paper called "Variety," which was printed for him from January, 1906, until June 18, 1910, by the plaintiff. On the latter date, the defendant ordered his printing done by a different person, and refused to continue doing business with the plaintiff, upon the alleged ground that he had discovered that the plaintiff had overcharged him on the price of paper used in his publication, and for that reason he declined to continue doing business with plaintiff, or to pay the notes theretofore given, or the amount of the bills, then claimed to be outstanding. These contentions the plaintiff then disputed and still disputes, and claims that he offered to allow defendant to inspect the bills for paper furnished, that he might satisfy himself of the correctness of the charges. These warrants of attachment rest entirely upon a statement which is claimed to have been made by defendant to the president of the plaintiff corporation in the course of a conversation on January 21, 1910, in regard to the status of their controversy, when defendant is claimed to have said:

"I intend to assign my business and property, and to turn them over to a stock company, and thereby prevent you (meaning plaintiff) from ever getting a dollar of the money due you (meaning plaintiff); and I will fool you (meaning plaintiff) out of it."

That such statement ever was made is denied absolutely by the defendant, and in his denial he is corroborated by two of his employés, each of whom claims to have overheard a conversation between defendant and the president of plaintiff, one of which is claimed to have taken place on June 21st, and the other on June 25th. Each employé

swears that there was no such statement made at the conversation which he overheard.

The only corroboration offered by plaintiff is that two years ago a notice was published in defendant's paper asking those who would like to buy stock in a company to be formed to take over "Variety" and to publish it to advise defendant of such desire. It does not appear that anything was ever done in response to said advertisement. The affidavit upon which the first warrant of attachment was granted was verified June 29, 1910, and contains no averment of any act done by defendant in prosecution of the said alleged threat; nor is such claim made in the affidavit on which the second warrant was issued, which was verified July 15, 1910. The defendant has made affidavit as to his financial responsibility and ability to respond to any judgment herein, and disputes any intention to dispose of any of his property, or to do more than assert what he believes to be a valid defense to these causes of action.

The mere fact that a defendant resists payment of a claim is not sufficient ground for the granting of a warrant of attachment, and in view of defendant's denials, corroborated as they are, it cannot be said that a proper case for the denial of his motion to vacate had been made out.

The orders appealed from must therefore be reversed, with $10 costs and disbursements, and the motions to vacate the warrants of attachment in each case granted, with $10 costs. All concur.

---

DEXTER & N. R. CO. v. FOSTER et al.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. EMINENT DOMAIN (§ 265*)—COSTS—GROUNDS.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

2. EMINENT DOMAIN (§ 177*)—PARTIES—DEFENDANTS—STATUTES.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 478; Dec. Dig. § 177.*]

3. EMINENT DOMAIN (§ 265*)—COSTS.

    The right of the owner to costs in eminent domain proceedings is not dependent on whether he is alone represented by an attorney, or employs an attorney who is acting for one or more of his codefendants.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 690–693; Dec. Dig. § 265.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes